# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

KEARNEY PARTNERS FUND, LLC,    )
by and through    )
LINCOLN PARTNERS FUND, LLC,    )
Tax Matters Partner,    )
                **Plaintiff,**    )
    )
    v.    )    CIVIL ACTION NO: _____
    )
THE UNITED STATES OF AMERICA, by and )
through its agent, the INTERNAL REVENUE )
SERVICE,    )
                **Defendant.**    )

## COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER 26 U.S.C. SECTION 6226

COMES NOW, Plaintiff and brings this action for a recovery of its deposits and for determination of the partnership adjustments as provided in the Notices of Final Partnership Administrative Adjustment and files this Complaint as follows:

    1.    This is a federal income tax partnership proceeding brought under 26 U.S.C. Section 6226(a) ("Code" or "Code §")[1] to contest the findings of the Internal Revenue Service ("Defendant" or "IRS") in the Notices of Final Partnership Administrative Adjustment dated December 9, 2009 ("FPAAs").[2]

---

[1] Unless indicated otherwise, all statutory citations are to the Internal Revenue Code of 1986 (as amended through December 31, 2001).

[2] The IRS previously issued a Statutory Notice of Deficiency to Raghunathan Sarma ("Pat Sarma") and Gaile Sarma asserting partnership adjustments at their individual taxpayer level. Pat Sarma and Gaile Sarma filed a Petition with the U.S. Tax Court contesting the Defendant's subject matter jurisdiction of asserting adjustments to partnership items or affected items through an individual partner level deficiency proceeding prior to the resolution of the identical partnership adjustments contained in the attached FPAAs.

## STATEMENT OF CLAIM

2.      Kearney Partners Fund, LLC ("Kearney Partners") through its tax matters partner, Lincoln Partners Fund, LLC ("Lincoln Partners"), hereby seeks (i) a recovery (with interest provided by law) of the $500.00 in federal income taxes deposited with the IRS for purposes of filing this action, (ii) a determination of the substantive partnership items and adjustments set forth in the FPAAs, (iii) a determination that no penalty can apply in this matter as Mr. Sarma disclosed the investments the IRS challenges in the FPAAs under the IRS' initiative in IRS Announcement 2002-2, 2002-2 I.R.B. 304, and if necessary, (iv) a determination of the reasonable cause that defeats any penalties that may be applicable.  The FPAAs were apparently issued by the IRS in Philadelphia, Pennsylvania.  The adjustments in the FPAAs relate to the tax periods ending December 14, 2001 ("12/14/01") and December 19, 2001 ("12/19/01").  Copies of the FPAAs dated December 9, 2009 are attached hereto as Exhibits A (12/14/01) and B (12/19/01), respectively, and incorporated herein by reference.

In the FPAAs, the IRS' primary position asserts Kearney Partners should be disregarded and all transactions engaged in by Kearney Partners during the tax periods ending 12/14/01 and 12/19/01 should be treated as engaged in directly by Pat Sarma.  Mr. Sarma elected to dispute the partnership-level proposed adjustments in the FPAAs in an individual proceeding under Code § 6223(e)(3)(B).  The IRS recently revoked Mr. Sarma's ability to make such election and Mr. Sarma will challenge the revocation.  The outcome of the challenge to the revocation will directly impact this matter.

3.      The FPAAs excessively and unreasonably seek to disallow and/or disregard partnership income and losses in a manner that is excessive, erroneous, unreasonable, arbitrary, and capricious.

2

4.    In addition, the FPAAs assert at least ten alternative contentions with respect to these adjustments, and asserts alternative forms of penalties under Code §§ 6662 and 6662A. All of these assertions are in dispute.

## THE PARTIES

5.    Kearney Partners Fund, LLC ("Kearney Partners") is a limited liability company organized in Delaware. It is treated as a partnership for federal income tax purposes. Kearney Partners' United States Partnership Returns (Form 1065) for tax periods ending 12/14/2001 and 12/19/2001 were filed with the Internal Revenue Service Center in Cincinnati, Ohio. Kearney Partners is now dissolved and does not have a principal place of business, but any business of Kearney Partners for these tax periods was conducted by Lincoln Partners Fund, LLC ("Lincoln Partners") of Sanibel, Florida. The members of Kearney Partners for the tax periods in issue are: (i) Lincoln Partners, whose principal place of business is 200 Periwinkle Way, Unit 328C, Sanibel, Florida 33957; and (ii) Delta Currency Management Company ("Delta"), a corporation organized in Delaware, whose address is One Bryant Park, 37th Floor, New York, New York 10036. Lincoln Partners, Kearney Partners, and a related LLC, Nebraska Partners Fund, LLC ("Nebraska Partners") (collectively "the LLCs"), are considered "partnerships" for federal tax purposes and therefore their members are considered "partners".

6.    Lincoln Partners is the tax matters partner of Kearney Partners for the tax periods ending 12/14/01 and 12/19/01. Lincoln Partners' address is 200 Periwinkle Way, Unit 328C, Sanibel, Florida 33957.

7.    The Defendant is the United States of America with respect to the claims and actions by its agent, the IRS, an executive agency within the Department of the Treasury. Service of process may be made on Defendant through the Attorney General of the Department of Justice.

## SUBJECT MATTER JURISDICTION AND VENUE

8.     This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1346(e) and 26 U.S.C. § 6226(a).   Venue is proper in this case based on 28 U.S.C. § 1402(c) and 26 U.S.C. § 6226.

## DEPOSIT

9.     Lincoln Partners as the tax matters partner filing this action is considered a pass-through (or indirect) partner for purposes of Income Tax Regulation ("Treas. Reg.") § 301.6226(e)-1(a)(1).   Thus, the indirect partners of Lincoln Partners are required to make a deposit under Code § 6226(e) to institute this action.   Deposits in the amount of $250.00 for tax period ending 12/14/01 and $250.00 for tax period ending 12/19/01 were made with the IRS office in Ft. Myers, Florida to satisfy Code § 6226(e).   In accordance with Code § 6226(e), the deposits represent the amount by which the tax liability of the indirect partners of Lincoln Partners could arguably be increased under one of IRS' alternative positions assuming "the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by" the FPAAs issued by the IRS. Code § 6226(e). Under IRS' primary position, the amount to be deposited would be zero in this case for the indirect partners.   Out of an abundance of caution, however, deposits were made as noted.

## ASSIGNMENTS OF ERROR

10.     The FPAAs issued by the IRS erred in the following particulars:

    a.     In attempting to do indirectly what the IRS admits it cannot do directly.

    b.     In seeking to substitute pejoratives and self-serving labels for the results permitted by law, simply because those results and that law do not favor the IRS in this particular case.

c.      In asserting a blunder bust of result-driven alternative assertions and thereby, tacitly admitting that no one assertion is effective.

d.      By asserting that Kearney Partners was formed and availed of solely for purposes of tax avoidance.

e.      By asserting that the creation of the LLCs and the purchases and sales of interests in the LLCs, as well as the purchases and sales of investments and positions by Kearney Partners was part of a sham, lacked economic substance, and was not engaged in for a legitimate business purpose.

f.      By asserting that Kearney Partners and all transactions in which Kearney Partners and its related LLCs were engaged in are treated as engaged in by Pat Sarma.

g.      By asserting that all items of income or loss previously allocated to the real partners of Kearney Partners are allocated to Pat Sarma.

h.      By relying on an invalid Income Tax Regulation and asserting that Kearney Partners was formed and availed of with a principal purpose to substantially reduce the present value of its partners' aggregate Federal tax liabilities in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.

i.      In violating the U.S. Constitution in at least three different ways by adopting and asserting here the most criticized regulation in the last 30 years, Treas. Reg. § 1.701-2.

j.      In failing to apply the principles embedded in the Examples of Treas. Reg. § 1.701-2.

k. By asserting that Kearney Partners' purchases and sales of investments was a sham, lacked economic substance, was not engaged in for a legitimate business purpose, and the gains resulting from such sales does not increase basis.

l. By asserting that Kearney Partners has not established that its partners' adjusted bases in their respective partnership interests are an amount greater than zero.

m. By asserting that the Court has jurisdiction to resolve the partners' bases issue.

n. By asserting that the adjustments of partnership items of Kearney Partners are attributable to a tax shelter for which no substantial authority has been established for the positions taken, and for which there was no showing of reasonable belief by the LLC or its partners that the position taken was more likely than not the correct treatment of the transactions.

o. In apparently failing to follow its own guidance and assert penalties even though Mr. Sarma properly disclosed the investments discussed in the FPAAs pursuant to IRS Announcement 2002-2.

p. By asserting that there has not been a showing by Kearney Partners or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.

q.  In further asserting that the 40% penalty attributable to a gross valuation misstatement applies under Code §§ 6662(a), 6662(b)(3), 6662(e), and 6662(h).

r.  In asserting alternatively that the 20% penalty attributable to negligence or disregard of rules and regulations applies as provided by Code §§ 6662(a), 6662(b)(1), and 6662(c).

s.  In asserting alternatively that the 20% penalty attributable to a substantial understatement of income tax applies under Code §§ 6662(a), 6662(b)(2), and 6662(d).

t.  In asserting alternatively that the 20% penalty for substantial valuation misstatement applies under Code §§ 6662(a), 6662(b)(3), and 6662(e).

u.  In asserting that the 30% penalty or alternatively, the 20% penalty, for any reportable transaction understatement applies under Code § 6662A when 6662A was enacted and became effective after the tax periods in issue.

## **FACTS**

11.  Raghunathan Sarma ("Pat Sarma" or "Mr. Sarma") is a Florida resident.

12.  Mr. Sarma acquired an interest in Lincoln Partners, the parent of Kearney Partners during 2001 as well as an interest in Nebraska Partners.

13.  For the pertinent tax periods, Lincoln Partners, Kearney Partners, and Nebraska Partners were LLCs taxed as partnerships and subject to TEFRA Unified Partnership procedures.

14.  The acquisitions of Mr. Sarma's interests in Lincoln Partners (and indirectly Kearney Partners) and Nebraska Partners were negotiated at arms' length.  Mr. Sarma engaged attorneys and accountants to handle the due diligence of the acquisitions as well as the tax treatment of transactions entered into by Mr. Sarma and the LLCs.

15.     Mr. Sarma continues to maintain his ownership interests in Lincoln Partners and Nebraska Partners.

16.     Even today, Lincoln Partners and Nebraska Partners own significant investment assets.

17.     Mr. Sarma recognized gains and losses from his ownership in Nebraska Partners and Lincoln Partners and has reaped substantial profits from his ownership in the investment partnerships.

18.     The IRS continues to tax Mr. Sarma on all gains flowing to him from Lincoln Partners and Nebraska Partners, but challenges the losses allocated to Mr. Sarma in the FPAAs.

19.     The gains and losses flowing to Mr. Sarma were generated at the LLC/partnership level and were properly reported for federal tax purposes by Kearney Partners, its owners, the related LLCs, and Mr. Sarma.

20.     Contrary to the assertion in the FPAAs, the tax consequences to each partner of partnership operations and of transactions between the partner and the partnership accurately reflected such partner's economic arrangement and clearly reflected such partner's income (individually and collectively) under the law.

21.     Kearney Partners was not formed or availed of or in connection with a transaction a principal purpose of which was to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Code.

22.     Kearney Partners made all state filings required by law.  Kearney Partners had separate bank accounts and otherwise did business with unrelated parties in their names.  In all respects, Kearney Partners conducted its dealings like a business, distinct from their partners.

23.    Mr. Sarma and the LLCs' other partners knew from experience that many investments carried potential tax advantages and they relied upon tax advisors to inform them of such advantages, but Mr. Sarma never acquired an interest in the LLCs for the sole purpose of obtaining tax benefits.

24.    On behalf of the LLCs, Mr. Sarma received accounting and tax advice from accountants and tax advisors for tax year 2001.

25.    Mr. Sarma engaged leading tax practitioners and his long-time trusted advisors, to advise him and the LLCs on how to report their transactions involving the LLCs. Mr. Sarma, the LLCs, and their partners were assured that the potential tax advantages from their transactions were solidly founded upon well established authorities, including the right of every citizen to structure his or her affairs in a manner that minimizes one's tax obligations under the law.

26.    That advice was accurate.

27.    Mr. Sarma and the LLCs, including Kearney Partners, exercised more than ordinary care, possessed reasonable cause, and proceeded in good faith in, *inter alia,* relying in good faith upon both longtime trusted advisors and those with special knowledge in these areas.

28.    Mr. Sarma and the LLCs relied upon their advisors to ensure that the investments relating to Mr. Sarma, the LLCs, and other partners were properly handled from a tax perspective and to substantiate the positions taken on the returns. Nonetheless, Mr. Sarma gladly disclosed the investments discussed in the FPAAs under the IRS' initiative in IRS Announcement 2002-2, to avoid any chance of the imposition of the accuracy-related penalty in relation to such investments. The IRS ignored its amnesty program and asserted penalties anyway.

29.    If a taxpayer disclosed any item in accordance with Announcement 2002-2, the IRS was suppose to waive the accuracy-related penalty under Code §§ 6662(b)(1), (2), (3), and (4) for any underpayment of tax attributable to that item.

30.    On behalf of the LLCs and himself, Mr. Sarma complied with the minimal requirements under Announcement 2002-2 including providing the IRS with all transactional documents in his possession.    Further, counsel for Mr. Sarma wrote the IRS and inquired whether Mr. Sarma provided all information the IRS required under Announcement 2002-2.    The IRS never asked for one additional item of information.

31.    Plaintiff is aware of the extent of the IRS' substantial knowledge about Mr. Sarma and the LLCs as discussed in the FPAAs and is therefore not surprised that the IRS needed no additional information.

32.    Despite Mr. Sarma's compliance with Announcement 2002-2 on behalf of himself and the LLCs, the IRS asserts penalties against Kearney Partners and its related LLCs.

33.    By imposing penalties, the IRS ignores the rules it voluntarily established in Announcement 2002-2 and its failure to do so should result in the invalidation of its action to deny Mr. Sarma and the LLCs penalty relief.    *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1969) ("a government agency must scrupulously observe rules, regulations, or procedures which it has established," and "[w]hen it fails to do so, its action cannot stand and courts will strike it down.").

34.    Because the IRS violated its own policy when denying Mr. Sarma and the LLCs penalty relief, the agency's decision should be set aside.

35.    Mr. Sarma disclosed his investments in the LLCs only because he believed he and the LLCs would obtain a penalty waiver, if a deficiency resulted.    Under Announcement 2002-2,

the IRS was able to gather privileged information on investments only by assuring Mr. Sarma (and the LLCs) that good-faith disclosure efforts would result in a waiver of penalties. For the IRS now to assert that the disclosure initiative, widely touted as an "amnesty initiative" or "penalty waiver program," was not for the benefit of taxpayers is disingenuous.

36.    The IRS agreed that it would waive penalties for taxpayers who satisfy the requirements of Announcement 2002-2. Mr. Sarma disclosed in reliance on that promise.

37.    Although the IRS was not statutorily required to offer a waiver program, once it did so, it was bound to follow the rules, policies, and procedures established by that program.

38.    Mr. Sarma, the LLCs, and their other partners are left with the impression the IRS only asserts penalties against the LLCs because they challenge the IRS' position on the tax consequences of the underlying investments and related transactions.

39.    The IRS' decision to deny Mr. Sarma and the LLCs penalty relief under Announcement 2002-2 when it provided such relief to other taxpayers (who did not challenge the tax treatment of their underlying investments) under the same facts and circumstances constitutes impermissible disparate treatment.

40.    The IRS should waive all penalties against the LLCs and Mr. Sarma, should such penalties apply, as the IRS has a duty to apply administrative policies without discrimination and to provide similar treatment for similarly situated taxpayers. *See United States v. Kaiser*, 363 U.S. 299, 308 (1960); *Bunce v. United States*, 28 Fed. Cl. 500, 509 (1993) (taxpayers have a legal right to uniform interpretation of the laws); *Powell v. United States*, 945 F.2d 374, 378 (11th Cir. 1991) ("The IRS is not allowed to treat two similarly situated taxpayers differently.").

41.    Notwithstanding Mr. Sarma's disclosure under Announcement 2002-2, the LLCs, Mr. Sarma, and the other partners filed their returns in good faith with due and reasonable regard

for the income tax rules and regulations, and in reliance on qualified tax professionals who were in possession of all pertinent facts when the return was filed. The actions undertaken by the LLCs and their partners meet and exceed the ordinary care protected by Code §§ 6662 and 6664 in complying with the income tax rules and regulations. The LLCs and their partners were not negligent nor did they act with intentional disregard of the rules or regulations under § 6662.

42. Neither the value nor the adjusted basis of any property claimed on any of the LLCs' returns for the tax periods in issue were 400% or more of the correct amount, nor was a price paid for any property or services (or for the use of property) claimed on the return in connection with any transaction between persons described in Code § 482, 400% or more (or 25% or less) of the amount determined under Code § 482 to be the correct amount of such price. Thus, the 40% valuation misstatement penalty is not applicable.

43. Neither the value nor the adjusted basis of any property claimed on any of the LLCs' returns were 200% or more of the correct amount, nor was a price paid for any property or services (or for the use of property) claimed on the return in connection with any transaction between persons described in Code § 482, 200% or more (or 50% or less) of the amount determined under Code § 482 to be the correct amount of such price. Thus, the 20% valuation misstatement penalty is not applicable to any of the LLCs or their partners.

44. Further, no valuation penalty should apply in light of the IRS' assertion that the LLCs should be disregarded rather than challenged based on a valuation issue. *Heasley v. Commissioner*, 902 F.2d 380, 383 (5th Cir. 1990).

45. The LLCs and their partners did not substantially understate their income tax. Moreover, none of the transactions at issue are tax shelters as defined by Code § 6662(d)(2)(C) or meets the standards of § 6662(d)(2)(D). Even if a substantial understatement of income tax

were ultimately determined to be due, there was substantial authority for the treatment of all items on the returns of the LLCs and each partner had a reasonable basis for believing that the tax treatment of such item was more likely than not the proper treatment. Furthermore, all items were disclosed on the appropriate returns and there was a reasonable basis for the tax treatment.

46.     The two tax periods in issue fall within the 2001 calendar year. Therefore, the penalty under Code § 6662A cannot apply as such Code Section was enacted and became effective after 2001.

47.     In all events, no penalty can or should be applied against the LLCs, as entities or against their partners since all concerned proceeded in good faith based upon reasonable cause within the meaning of Code § 6664(c).

48.     Based on the foregoing, Kearney Partners and the other LLCs must be considered bona fide partnerships under the tax laws. Each partnership was entered into by Mr. Sarma and the other partners for the substantial business purpose to make money.

WHEREFORE, Plaintiff prays after due proceedings:

(i)     For a redetermination of the FPAAs to remove all adjustments to income, losses, distributions, basis, and penalties;

(ii)    For a recovery of the deposits in the amount of $250.00 for tax period ending 12/14/01 and $250.00 for tax period ending 12/19/01 (plus any interest permitted by law);

(iii)   That Defendant bear the burden of proof as to all issues; and

(iv)    That the Court grant such other and further relief as it deems appropriate.

Respectfully submitted,

Charles E. Hodges II
Georgia Bar No. 358773
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, NE, Ninth Floor
Atlanta, Georgia 30303
(404)659-1410
(404)659-1852 Facsimile


G. Gordon Harrison
Florida Bar No. 0111548
Pavese Law Firm
Post Office Drawer 1507
Fort Myers, Florida 33902
(239) 336-6243
(239) 332-2243 Facsimile

COUNSEL FOR PLAINTIFF

327318.3
003890-000000:3/8/2010

**Internal Revenue Service**                    **Department of the Treasury**

Refer To:
  E:SBSE:TS:TEFRA GROUP EAST

Taxpayer Identifying Number:
  ▮▮▮▮▮▮

Name of Partnership:
  KEARNEY PARTNERS FUND LLC

Partnership Identifying Number:
  ▮▮▮▮▮▮

Date:   DEC 0 9 2009

Tax Year Ended:
  12/14/2001

Contact Hours:
  8:00 A.M. to 4:30 P.M.

LINCOLN PARTNERS FUND LLC
c/o APEX CAPITAL MANAGEMENT
ONE BRYANT PARK 37TH FLOOR
NEW YORK, NY 10036

Person to Contact:
  Lanny S. Brown ID#02-12324

Contact Telephone Number:
  215-861-3841  FAX 215-861-1616

Date FPAA Mailed to Tax Matters Partner:
  DEC 0 7 2009

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. IRC section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.



EXHIBIT

A

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership."*

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed. Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, you can write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

Tim Conley

Timothy M. Conley, Territory Manager
Technical Services - Western Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

**FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP**

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U

# INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

6. For a partner who is a subsidiary corporation in a consolidated group:

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a).

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

7. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

8. If the Tax Matters Partner signs this offer, please include the title with the signature.

9. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign it if, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

   - If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

# F P A A

| Form **870-PT** (Rev. 6-2008) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO:<br><br>E:SBSE:TS:TEFRA GROUP EAST |
|---|---|---|
| Taxpayer(s) name(s), address and zip code:<br><br>LINCOLN PARTNERS FUND LLC<br>C/O APEX CAPITAL MANAGEMENT<br>ONE BRYANT PARK 37TH FLOOR<br>NEW YORK, NY 10036<br><br>TIN: ▆▆▆▆▆ | Name of Partnership:<br>KEARNEY PARTNERS FUND LLC<br><br>EIN: ▆▆▆▆▆<br><br>Name of Tax Matters Partner:<br>DELTA CURRENCY MANAGEMENT CO. | Tax Year(s) Ended:<br><br>12/14/2001 |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |



Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP:<br>Kearney Partners Fund, LLC<br><br>EIN: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| | 12/14/2001 | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
|   a.  Ordinary income (loss) from partnerships, etc. | (376.00) | | |
|   b. | | | |
|   c. | | | |
|   d. | | | |
|   e. | | | |
|   f. | | | |
|   g. | | | |
| **TOTAL ADJUSTMENTS TO ORDINARY INCOME** | (376.00) | | |
| **OTHER ADJUSTMENTS** | | | |
| A.  Other income (loss) | | | |
|     (1) ADJUSTMENT | 6,329.00 | | |
|     (2) AS REPORTED | (6,329.00) | | |
|     (3) CORRECTED | 0.00 | | |
| B.  Partners' basis in Kearney | | | |
|     (1) ADJUSTMENT | | | |
|     (2) AS REPORTED | | | |
|     (3) CORRECTED | 0.00 | | |

**REMARKS:**

The purported partnership Kearney Partners Fund, LLC is not recognized for federal income tax purposes.

Ordinary Income has been allocated to Raghunathan Sarma outside the purported partnership as shown on Schedule X. (see attached 886-A)

The Accuracy Related Penalty applies at 40%--see attached 886-A

The Accuracy-Related Penalty under 6662A applies to any reportable understatement as explained in attached 886A



Page         of

| Form **4605-A** | Department of the Treasury — Internal Revenue Service<br>**Examination Changes - Partnerships, Fiduciaries, S Corporations, and<br>Interest Charge Domestic International Sales Corporations (Unagreed and Excepted Agreed)** | | |
|---|---|---|---|

| Name and address<br>Kearney Partners Fund, LLC<br>c/o Apex Capital Management<br>One Bryant Park, 37th Floor<br>New York, New York 10036 | Employer Identification Number | Form Number<br>1065 |
|---|---|---|
| | Person Examination<br>Changes Were<br>Discussed With | Name |
| | | Title |

| 1. Adjustments to ordinary, distributable net, or taxable income. | Period End: 12/14/2001 | Period End: | Period End: |
|---|---|---|---|
| a. Ordinary income (loss) from partnerships, etc. | (376.00) | | |
| b. | | | |
| c. | | | |
| d. | | | — |
| e. | | | |
| f. | | | |
| g. | | | |
| 2. Total adjustments to ordinary, distributable net, or taxable income. | (376.00) | | |
| 3. Ordinary, distributable net, or taxable income as reported. | 376.00 | | |
| 4. Corrected ordinary, distributable net, or taxable income. | 0.00 | | |
| 5. Other adjustments | | | |
| a. Other income (loss) | | | |
| (1) Adjustment | 6,329.00 | | |
| (2) As Reported | (6,329.00) | | |
| (3) Corrected | 0.00 | | |
| b. Partners' basis in Kearney | | | |
| (1) Adjustment | | | |
| (2) As Reported | | | |
| (3) Corrected | 0.00 | | |

Remarks

The purported partnership Kearney Partners Fund, LLC is not recognized for federal income tax purposes.

Ordinary Income has been allocated to Raghunathan Sarma outside the purported partnership as shown on Schedule X. (see attached 886-A)

The Accuracy Related Penalty applies at 40%--see attached 886-A

The Accuracy-Related Penalty under 6662A applies to any reportable understatement as explained in attached 886A

| Examiner's Signature: | Employee ID: | Area Office: | Date: |
|---|---|---|---|
| Name   Gerard Buzzerio | 22-02715 | Paramus, New Jersey | 11/03/2009 |

Form **4605-A** (Rev. 12-2008)          Catalog Number 41817X          publish.no.irs.gov          Department of the Treasury — **Internal Revenue Service**
RGS Version  10.20.00

| Form **886-A** (Rev. January 1994) | Department of the Treasury - Internal Revenue Service  FPAA  **EXPLANATION OF ITEMS** | Schedule No. or Exhibit |
|---|---|---|
| Name of taxpayer  **Kearney Partners Fund, LLC** | Tax Identification Number | Year/Period Ended  December 5, 2001 –  December 14, 2001 |

**Notice of Final Partnership Administrative Adjustment**
**Explanation of Adjustments**

1. It is determined that Kearney Partners Fund, LLC [hereinafter Kearney] was formed and availed of solely for purposes of tax avoidance and, in furtherance of such purpose, engaged in a prearranged transaction designed and executed through a series of meaningless steps, using a straddle, a tiered partnership structure, a transitory partner, and the absence of a Section 754 election to allow a tax shelter investor to claim a permanent non-economic loss [hereinafter the Transaction]. The Transaction, and/or series of steps comprising the transaction, including the creation of Nebraska Partners Fund, LLC [hereinafter Nebraska], Lincoln Partners Fund, LLC [hereinafter Lincoln], and Kearney to engage in such Transaction, and the purchases and sales of interests in Nebraska, Lincoln, and Kearney, and the purchase and sale of foreign currency contracts and positions, was a sham, lacked economic substance, and was not engaged in for a legitimate business purpose. In addition, the purported partnerships were not created for the purpose of carrying on a business by members/partners or for the sharing of profits and losses from such activity. It is therefore determined, under judicial doctrines of step transaction, economic substance, and substance over form that Kearney is not recognized as a partnership for Federal income tax purposes, and that its purported partners are not recognized as partners.

   Further, it is determined that all transactions engaged in by the purported partnership Kearney, are treated as engaged in by Raghunathan Sarma in his individual capacity. Accordingly, all items of income, gain, loss and deduction that were allocated to the purported members/partners of Kearney, other than gain and loss from the purchase and sale of foreign currency contracts and positions which are disallowed, are reallocated to Raghunathan Sarma.

2. It is determined that Kearney was formed and availed of, in connection with the Transaction, with a principal purpose to substantially reduce the present value of its members/partners' aggregate Federal tax liabilities in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. Pursuant to Section 1.701-2 of the Income Tax Regulations, it is consequently determined that Kearney is not recognized as a partnership for Federal income tax purposes, that its purported partners are not recognized as partners, and that all transactions engaged in by the purported partnership Kearney, are treated as engaged in by Raghunathan Sarma in his individual capacity. Accordingly, all items of income, gain, loss and deduction that were allocated to the purported partners of Kearney, other than gain and loss from the purchase and sale of foreign currency contracts and positions which are disallowed, are reallocated to Raghunathan Sarma.

3. Alternatively, it is determined that Kearney has not established that its members'/partners' adjusted bases in their respective partnership interests are an amount greater than zero. In this regard, Kearney's purchase and sale of foreign currency contracts and positions was a sham, lacked economic substance, and was not engaged in for a legitimate business purpose and the purported gain resulting from any such sale does not increase basis.

FPAA

| Form **886-A** | Department of the Treasury - Internal Revenue Service **EXPLANATION OF ITEMS** | Schedule No. or Exhibit |
|---|---|---|
| (Rev. January 1994) | | |
| Name of taxpayer **Kearney Partners Fund, LLC** | Tax Identification Number ▉▉▉▉▉▉ | Year/Period Ended December 5, 2001 – December 14, 2001 |

<u>Accuracy Related Penalties</u>:

It is determined that the adjustments of partnership items of Kearney are attributable to a tax shelter for which no substantial authority has been established for the positions taken, and for which there was no showing of reasonable belief by the partnership or its members/partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatements, or (3) negligence or disregarded rules and regulations. There has not been a showing by the partnership or any of its members/partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its members/partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Kearney. The components of the accuracy-related penalty are imposed as follows:

a. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to a gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

b. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), and 6662(c) of the Internal Revenue Code.

c. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

d. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the accuracy related penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under Sections 7201, 7206, or other provisions of federal law if determined to be appropriate.

It is determined that the 30% accuracy-related penalty provided by I.R.C. § 6662A (c) or, alternatively, the 20% accuracy-related penalty provided by I.R.C. § 6662A (a) applies to the entire amount of any reportable transaction understatement with respect to a tax year ending after October 22, 2004 that is attributable to the adjustments of partnership items of the Kearney Partners Fund, LLC for the tax period ended December 14, 2001.



Schedule X
Kearney 12/05/01 -12/14/01

Kearney Partners Fund, LLC (period ending -12/14/01) is not recognized for federal income tax purposes.  Further, items of income, gain, loss and deduction have been reallocated as follows:

| Reallocations | Period 12/05/01 - 12/14/01 |
|---|---|
| **Raghunathan Sarma** | |
| Ordinary Income | $376 |
| Other Income (Loss) | $0 |
| | |
| **Lincoln Partners Fund, LLC** | |
| Ordinary Income | $0 |
| Other Income (Loss) | $0 |
| | |
| **Delta Currency Management Co.** | |
| Ordinary Income | $0 |
| Other Income (Loss) | $0 |
| | |
| **Totals** | |
| Ordinary Income | $376 |
| Other Income (Loss) | $0 |

LINCOLN PARTNERS FUND LLC
c/o APEX CAPITAL MANAGEMENT
ONE BRYANT PARK 37TH FLOOR
NEW YORK, NY 10036

**Internal Revenue Service**

**Department of the Treasury**

Refer To:
   E:SBSE:TS:TEFRA GROUP EAST

Taxpayer Identifying Number:
█████████

Name of Partnership:
KEARNEY PARTNERS FUND LLC

Date:       DEC ⁰9 ...

Partnership Identifying Number:
█████████

Tax Year Ended:
   12/19/2001

LINCOLN PARTNERS FUND LLC
c/o APEX CAPITAL MANAGEMENT
ONE BRYANT PARK 37TH FLOOR
NEW YORK, NY 10036

Contact Hours:
   8:00 A.M. to 4:30 P.M.

Person to Contact:
   Lanny S. Brown ID#02-12324

Contact Telephone Number:
   215-861-3841   FAX 215-861-1616

Date FPAA Mailed to Tax Matters Partner:

       DEC 0 7 2009

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. IRC section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U



**EXHIBIT**

B

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership."*

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed. Petitions filed with the United States Tax Court must be mailed to:

> **United States Tax Court**
> **400 Second Street, NW**
> **Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, you can write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

*Tim Conley LSB*

Timothy M. Conley, Territory Manager
Technical Services - Western Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

**FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP**

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments.  You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter.  Thank you for your cooperation.

Letter 1830 (Rev. 7-2007)
Catalog Number 61242U

# INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

6. For a partner who is a subsidiary corporation in a consolidated group:

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77(a).

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

7. For a partner who is the common parent corporation of a consolidated group, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

8. If the Tax Matters Partner signs this offer, please include the title with the signature.

9. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v). The agreement should also be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

# F P A A

| Form **870-PT** (Rev. 6-2008) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO:<br>E:SBSE:TS:TEFRA GROUP EAST |
|---|---|---|
| Taxpayer(s) name(s), address and zip code:<br>LINCOLN PARTNERS FUND LLC<br>c/o APEX CAPITAL MANAGEMENT<br>ONE BRYANT PARK 37TH FLOOR<br>NEW YORK, NY 10036<br><br>TIN: ▮▮▮▮▮ | Name of Partnership:<br>KEARNEY PARTNERS FUND LLC<br><br>EIN: ▮▮▮▮▮<br>Name of Tax Matters Partner:<br>DELTA CURRENCY MANAGEMENT CO, | Tax Year(s) Ended:<br><br>12/19/2001 |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under the provisions of sections 6224(c) and 7121 of the Internal Revenue Code (IRC), the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law). IRC Section 6651 late filing penalty applies to any late filed (or non-filed) returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |



**FPAA**

Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Kearney Partners Fund, LLC | | | |
| | 12/19/2001 | | |
| EIN: ▓▓▓▓▓ | | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a.   Ordinary income (loss) from partnerships, etc. | (167.00) | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| **TOTAL ADJUSTMENTS TO ORDINARY INCOME** | (167.00) | | |
| **OTHER ADJUSTMENTS** | | | |
| A.  Other income (loss) | | | |
|    (1) ADJUSTMENT | (239.00) | | |
|    (2) AS REPORTED | 239.00 | | |
|    (3) CORRECTED | 0.00 | | |
| B.  Partners' basis in Kearney | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | 0.00 | | |

**REMARKS:**

The purported partnership Kearney Partners Fund, LLC is not recognized for federal income tax purposes.

Ordinary Income has been allocated to Raghunathan Sarma outside the purported partnership as shown on Schedule X. (see attached 886-A)

The Accuracy Related Penalty applies at 40%--see attached 886-A

The Accuracy-Related Penalty under 6662A applies to any reportable understatement as explained in attached 886A



Page    of

| Form **4605-A** | Department of the Treasury — Internal Revenue Service |
|---|---|
| | **Examination Changes - Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations (Unagreed and Excepted Agreed)** |

| Name and address | Employer Identification Number | | Form Number |
|---|---|---|---|
| Kearney Partners Fund, LLC<br>c/o Apex Capital Management<br>One Bryant Park, 37th Floor<br>New York, New York 10036 | ▉▉▉▉▉▉ | Name | 1065 |
| | Person Examination Changes Were Discussed With | Title | |

| 1. Adjustments to ordinary, distributable net, or taxable income. | Period End: 12/19/2001 | Period End: | Period End: |
|---|---|---|---|
| a. Ordinary income (loss) from partnerships, etc. | (167.00) | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| 2. Total adjustments to ordinary, distributable net, or taxable income. | (167.00) | | |
| 3. Ordinary, distributable net, or taxable income as reported. | 167.00 | | |
| 4. Corrected ordinary, distributable net, or taxable income. | 0.00 | | |
| 5. Other adjustments | | | |
| a. Other income (loss) | | | |
| (1) Adjustment | (239.00) | | |
| (2) As Reported | 239.00 | | |
| (3) Corrected | 0.00 | | |
| b. Partners' basis in Kearney | | | |
| (1) Adjustment | | | |
| (2) As Reported | | | |
| (3) Corrected | 0.00 | | |

Remarks

The purported partnership Kearney Partners Fund, LLC is not recognized for federal income tax purposes.

Ordinary Income has been allocated to Raghunathan Sarma outside the purported partnership as shown on Schedule X. (see attached 886-A)

The Accuracy Related Penalty applies at 40%--see attached 886-A

The Accuracy-Related Penalty under 6662A applies to any reportable understatement as explained in attached 886A

| Examiner's Signature: | Employee ID: | Area Office: | Date: |
|---|---|---|---|
| Name   Gerard Buzzerio | 22-02715 | Paramus, New Jersey | 11/03/2009 |

Form **4605-A** (Rev. 12-2008)   Catalog Number 41817X   publish.no.irs.gov   Department of the Treasury — Internal Revenue Service
RGS Version  10.20.00

**FPAA**

| Form **886-A**<br><br>(Rev. January 1994) | Department of the Treasury - Internal Revenue Service<br>**EXPLANATION OF ITEMS** | Schedule No. or Exhibit |
|---|---|---|
| Name of taxpayer<br><br>**Kearney Partners Fund, LLC** | Tax Identification Number | Year/Period<br>**December 15, 2001 to<br>December 19, 2001** |

### Notice of Final Partnership Administrative Adjustment
### Explanation of Adjustments

1. It is determined that Kearney Partners Fund, LLC [hereinafter Kearney] was formed and availed of solely for purposes of tax avoidance and, in furtherance of such purpose, engaged in a prearranged transaction designed and executed through a series of meaningless steps, using a straddle, a tiered partnership structure, a transitory partner, and the absence of a Section 754 election to allow a tax shelter investor to claim a permanent non-economic loss [hereinafter the Transaction]. The Transaction, and/or series of steps comprising the transaction, including the creation of Nebraska Partners Fund, LLC [hereinafter Nebraska], Lincoln Partners Fund, LLC [hereinafter Lincoln], and Kearney to engage in such Transaction, and the purchases and sales of interests in Nebraska, Lincoln, and Kearney, and the purchase and sale of foreign currency contracts and positions, was a sham, lacked economic substance, and was not engaged in for a legitimate business purpose. In addition, the purported partnerships were not created for the purpose of carrying on a business by members/partners or for the sharing of profits and losses from such activity. It is therefore determined, under judicial doctrines of step transaction, economic substance, and substance over form that Kearney is not recognized as a partnership for Federal income tax purposes, and that its purported partners are not recognized as partners.

   Further, it is determined that all transactions engaged in by the purported partnership Kearney, are treated as engaged in by Raghunathan Sarma in his individual capacity. Accordingly, all items of income, gain, loss and deduction that were allocated to the purported members/partners of Kearney, other than gain and loss from the purchase and sale of foreign currency contracts and positions which are disallowed, are reallocated to Raghunathan Sarma.

2. It is determined that Kearney was formed and availed of, in connection with the Transaction, with a principal purpose to substantially reduce the present value of its members/partners' aggregate Federal tax liabilities in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. Pursuant to Section 1.701-2 of the Income Tax Regulations, it is consequently determined that Kearney is not recognized as a partnership for Federal income tax purposes, that its purported partners are not recognized as partners, and that all transactions engaged in by the purported partnership Kearney, are treated as engaged in by Raghunathan Sarma in his individual capacity. Accordingly, all items of income, gain, loss and deduction that were allocated to the purported partners of Kearney, other than gain and loss from the purchase and sale of foreign currency contracts and positions which are disallowed, are reallocated to Raghunathan Sarma.

3. Alternatively, it is determined that Kearney has not established that its members'/partners' adjusted bases in their respective partnership interests are an amount greater than zero. Further, Kearney's purchase and sale of foreign currency contracts and positions was a sham, lacked economic substance, and was not engaged in for a legitimate business purpose and the purported gain resulting from any such sale does not increase basis.

4. Alternatively, if it is determined that the gains from the purchases and sales of the foreign currency contracts and positions reported by Kearney, during Kearney's period ending November 20, 2001 are respected for federal income tax purposes, then under the judicial doctrines of step transaction and substance over form, it is determined that the gains should be allocated to Raghunathan Sarma.

| Form 886-A | Department of the Treasury - Internal Revenue Service **FPAA**<br>**EXPLANATION OF ITEMS** | Schedule No. or Exhibit |
|---|---|---|
| (Rev. January 1994) | | |

| Name of taxpayer<br><br>**Kearney Partners Fund, LLC** | Tax Identification Number | Year/Period<br>**December 15, 2001 to**<br>**December 19, 2001** |
|---|---|---|

Accuracy Related Penalties:

It is determined that the adjustments of partnership items of Kearney are attributable to a tax shelter for which no substantial authority has been established for the positions taken, and for which there was no showing of reasonable belief by the partnership or its members/partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatements, or (3) negligence or disregarded rules and regulations. There has not been a showing by the partnership or any of its members/partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its members/partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Kearney.   The components of the accuracy-related penalty are imposed as follows:

    a.   a 40 percent penalty shall be imposed on the portion of any underpayment attributable to a gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

    b.   a 20 percent penalty shall be imposed on the portion of the underpayment  attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), and 6662(c) of the Internal Revenue Code.

    c.   a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

    d.   a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under Sections 7201, 7206, or other provisions of federal law if determined to be appropriate.

It is determined that the 30% accuracy-related penalty provided by I.R.C. § 6662A (c) or, alternatively, the 20% accuracy-related penalty provided by I.R.C. § 6662A (a) applies to the entire amount of any reportable transaction understatement with respect to a tax year ending after October 22, 2004 that is attributable to the adjustments of partnership items of the Kearney Partners Fund, LLC for the tax period ended December 19, 2001.

**FPAA**

Schedule X
Kearney 12/15/01 -12/19/01

Kearney Partners Fund, LLC (period ending -12/19/01) is not recognized for federal income tax purposes.  Further, items of income, gain, loss and deduction have been reallocated as follows:

| Reallocations | Period 12/15/01 - 12/19/01 |
|---|---|
| **Raghunathan Sarma** | |
| Ordinary Income | $167 |
| Other Income (Loss) | $0 |
| | |
| **Lincoln Partners Fund, LLC** | |
| Ordinary Income | $0 |
| Other Income (Loss) | $0 |
| | |
| **Delta Currency Management Co.** | |
| Ordinary Income | $0 |
| Other Income (Loss) | $0 |
| | |
| **Totals** | |
| Ordinary Income | $167 |
| Other Income (Loss) | $0 |

LINCOLN PARTNERS FUND LLC
c/o APEX CAPITAL MANAGEMENT
ONE BRYANT PARK 37TH FLOOR
NEW YORK, NY 10036