**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

KEARNEY PARTNERS FUND, LLC,
by and through
LINCOLN PARTNERS FUND, LLC,
Tax Matters Partner, et al.,

Plaintiffs,

vs. Case No. 2:10-cv-153-FtM-SPC

THE UNITED STATES OF AMERICA,
etc.

Defendant.

---

**Order**

This cause is before the Court with regard to Plaintiffs' Partial Objection to Magistrate Judge's Order Denying the Protective Motion to Compel by Plaintiffs (Doc. No. 149), filed on December 27, 2012, Defendant's Opposition (Doc. No. 152), filed on January 14, 2013, the United States of America's Partial Objection to Order Dated February 4, 2013 (D.E. 157) Granting in Part and Denying in Part Plaintiffs' Motion for Clarification and Reconsideration (D.E. 148) (Doc. No. 169), filed on February 21, 2013, and Plaintiffs' Opposition (Doc. No. 172 ), filed on March 7, 2013. After a careful review of the parties' submissions and the applicable law, the Court grants in part and denies in part both parties' partial objections.

**BACKGROUND**

On September 21, 2013, Plaintiffs filed a Protective Motion to Compel the Production of Documents on Privilege Logs and Memorandum of Law in Support ("Plaintiffs' Motion to Compel") (Doc. No. 112), which sought the production of sixty-

eight items listed on Defendant's privilege logs and challenged the United States' assertion of attorney-client, deliberative process, and work product privileges. On November 26, 2012, the Court (Doc. No. 139) required Defendant to produce the requested documents for an *in camera* review. On December 13, 2012, Magistrate Judge Chappell denied Plaintiffs' Motion to Compel and found that there was no good cause to support a claim for attorney-client privilege, but upheld the assertion of the deliberative process privilege. (Doc. No. 147.)

On December 27, 2012, Plaintiffs filed a Motion for Clarification and/or Reconsideration of the Court's December 13, 2012 Order ("Motion for Clarification") (Doc. No. 148), which declared their intent to challenge the Magistrate's ruling and asked the Court to amend its Order to require the United States to produce those documents for which only the attorney-client and/or attorney work product privileges had been claimed. On February 4, 2013, the Magistrate issued a new Order (Doc. No. 157) granting in part and denying in part Plaintiffs' Motion to Compel and requiring the production of 15 documents for which Defendant had asserted only the attorney-client privilege.[1] The February 4, 2013 Order has since been stayed pending the resolution of the parties' objections. (See Doc. No. 168.) Both parties have filed partial objections to the Magistrate Judge's February 4, 2013 Order.

## STANDARD OF REVIEW

[1]Plaintiffs have since clarified that there are four additional documents that were subject to only the attorney-client privilege: AC00419, ADDKEARN-000122, ADDKEARN-000128, and ADDKEARN-000135-136. Defendant initially asserted the attorney-client and deliberative process privileges for these four documents but later withdrew the deliberative process privilege. (See Doc. No. 127, p. 10, n. 4.) Judge Chappell was not aware of this and did not order production of the four documents. (See Doc. No. 157, p. 5.) Thus, the Court will examine these additional documents when evaluating the parties' objections to the attorney-client privilege.

The parties filed objections pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. To prevail, they must show that the conclusions in the Order are clearly erroneous or contrary to law. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A); Nat'l Ass'n for the Advancement of Colored People, ex rel. Fla. State Conference of Branches of NAACP v. Fla. Dep't of Corr., 122 F. Supp. 2d 1335, 1337 (M.D. Fla. 2000).

Findings of fact "are 'clearly erroneous' when, although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246 (11th Cir. 2002) (citing Univ. of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir. 1985)). Under the clearly erroneous standard of review, the magistrate's findings should not be rejected even if a reviewing court could have decided the issue differently. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). "When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Caban-Wheeler v. Elsea, 71 F.3d 837, 843 (11th Cir. 1996). In contrast, a review of the Magistrate Judge's application of the law is de novo, as the "application of an improper legal standard . . . is never within a court's discretion." Johnson & Johnson Vision Care, Inc., 299 F.3d at 1246. A finding is considered contrary to law if it misapplies the relevant statutes, case law, or rules of procedure. Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000).

## DISCUSSION

1. Plaintiffs' Objections to the February 4, 2013 Order

**Deliberative Process Privilege**

a. Were the Documents Privileged

Plaintiffs object to the Magistrate's finding that the documents at issue were subject to the deliberative process privilege. The privilege protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (internal quotation marks omitted). In order for the privilege to apply, a document must be both "pre-decisional, *i.e.*, 'prepared in order to assist an agency decision maker in arriving at his decision,' . . . [and] deliberative, 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1263 (11th Cir. 2008) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)).

Under the first prong, the Court must identify privileged communications that precede an agency's final determination or outcome on a policy or legal matter.[2] Miccosukee, 516 F.3d at 1263. However, a document at the time of preparation may lose privileged status if "adopted, formally, or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C Cir. 1980); see also N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975). Moreover, although the Government need not tether a pre-decisional communication to a specific, discrete, or final decision, id., at

[2]Plaintiffs emphasize that they are not asking for documents relating to "policy matters" or opinions regarding "policy formation," and thus appear to mistakenly suggest that the deliberative process privilege only applies to policy determinations. (See Doc. No. 149, p. 17.)

151, "an overly lax construction of the term 'predecisional' submerges the rule of disclosure under exemption." City of Va. Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1254 (4th Cir. 1993).

As for the second prong, "deliberative" documents typically reflect the "give-and-take of the consultative process" that is antecedent to final agency action. Coastal, 617 F.2d at 866. The privilege extends to recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Fla. House of Representatives v. United States Dep't of Commerce, 961 F.2d 941, 945 (11th Cir.1992). However, factual findings and conclusions are not protected, unless disclosure of the factual material would reveal the deliberative process or where the factual material is so inextricably intertwined with the deliberative material that meaningful segregation is not possible. Miccosukee Tribe, 516 F.3d at 1263; Pacific Gas & Elec. Co. v. United States, 70 Fed. Cl. 128, 133 (Fed. Cl. 2006).

When examining the deliberative process privilege, courts are mindful of several issues: (1) the nature of the decision-making authority vested in the office or person issuing the disputed document. Taxation with Representation Fund v. Internal Revenue Service, 646 F.2d 666, 679 (D.C. Cir. 1981); see also Sears, 421 U.S. at 155 (distinguishing between a non-privileged disclosure by the General Counsel with the authority to reach a final decision on a matter and a lower level official's decision to file a complaint which must be approved by superiors and is therefore privileged); (2) the flow of documents along a decision-making ladder. For example, "[i]ntra-agency memoranda from 'subordinate' to 'superior' on an agency ladder are likely to be more

'deliberative' in character than documents emanating from superior to subordinate." Schlefer v. United States, 702 F.2d 233, 238 (D.C. Cir. 1983); and (3) the character of the agency documents. For instance, "deliberative" documents tend to have less precedential weight than final authoritative statements of agency policies, id. at 241, and are generally more candid or personal in nature. See United States v. Nixon, 418 U.S. 683, 705 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process."). The party asserting the privilege bears the burden of justifying its application, and the privilege is narrowly construed. Pacific Gas & Elec., 70 Fed. Cl. at 133.

With these considerations in mind, the Court has conducted an *in camera* review of the documents in question and concludes that with the exception of one particular Internal Revenue Service ("IRS") memorandum, they fall under the protection of the deliberative process privilege. The documents are both pre-decisional and deliberative. They consist of intra-agency opinions and recommendations of IRS investigators, examiners, and counsel at the Office of Chief Counsel for the IRS. They reflect the "give-and-take process" of the IRS's deliberations that preceded Defendant's final determinations on Plaintiffs' tax obligations concerning the FOCus partnerships. There are preliminary drafts of internal memoranda discussing Plaintiffs' tax obligations and various e-mails between IRS officials providing their opinions, views, and recommendations regarding the application of accuracy-related penalties and Plaintiffs' compliance with Announcement 2002-2.

Plaintiffs appear to object that the deliberations between the IRS officials are not

at a high enough level for the privilege to apply. (See Doc. No. 149, p. 17 ("Plaintiffs are not seeking the White House Chief of Staff's memoranda to the President regarding policy decisions. Instead, Plaintiffs are only seeking documents relating to an examination of their tax returns.")). That is irrelevant. What matters is that nearly all of the communications occurred during the Agency's audit of Plaintiffs' tax returns, but prior to a final decision or conclusion appears to have been reached. Moreover, the documents and communications reveal an impersonal nature and tone evinced by various edits, comments and notes authored by auditors, counsel, and other IRS officials. Defendant has a compelling interest in taking part in this consultative intra-agency process without the fear that the pre-decisional thoughts, recommendations, and opinions of its officials will be disclosed. See Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1279 (11th Cir. 2004) (concluding that the deliberative process privilege applies to "the entire body of collaborative work performed by the auditors . . . ; the staff auditors' notes and/or memoranda summarizing site visits, interviews, meetings, and/or telephone conversations . . . ; and suggestions and critiques from the auditors' peers and superiors, including recommendations for further action.").

However, "[c]haracterizing the documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word." Coastal States, 617 F.2d at 869. The Court holds that Defendant has impermissibly asserted the deliberative process privilege with respect to the legal memorandum that spans Bates Nos. ADDKEARN-00256-00262. The document does not appear to be either pre-decisional or deliberative. It is a legal opinion by Debra A.

Butler, the Associate Chief Counsel (Procedure & Administration) in the Office of Chief Counsel, Internal Revenue Service to the Associate Area Counsel in the Large & Mid-Size Business division. The memorandum is in response to a request for assistance regarding whether accuracy-related penalties may be imposed on taxpayers notwithstanding their disclosure of their participation in the FOCus partnership. It appears to be the type of legal document "relied upon by recipients as statements of law and public policy that have not been found to be 'pre-decisional.'" Jones v. Murphy, 256 F.R.D. 510, 517 (D. Md. 2008).

For example, in Tax Analysts v. Internal Revenue Service, 117 F.3d 607 (D.C. Cir. 1997), the D.C. Circuit dealt with similar legal memoranda that were the subject of the deliberative process privilege. The documents were labeled "Field Service Advice Memoranda ("FSAs"), and were issued by the Office of Chief Counsel for the IRS to field personnel. Id. at 608. Although the memoranda were not binding upon the field personnel, the FSAs were routinely used and relied on by field personnel as statements of law. Id. at 617. As the court reasoned, the documents were "produced in the process of formulating policy," and were "themselves statements of an agency's legal position, and as such, cannot be viewed as predecisional." Id. Because the FSAs represented "the considered view of the Chief Counsel's national office on significant legal issues, FSAs d[id] not reflect the 'give and take' that characterizes deliberative materials." Id.

Similarly, the memorandum here reflects the Office of the Chief Counsel's statements of law and assessments of Plaintiffs' tax obligations. The opinion appears to be in its final form, with no visible marks or edits. The tone of the document is

impersonal with distinct conclusion, facts, and law and analysis sections. Although the memorandum indicates that it may not be used or cited as precedent, the document is a representation of the IRS's legal position in this case.[3] And even if the document precedes the IRS's final decisions in Plaintiffs' case, there is no indication that it precedes the Agency's final legal position.[4] See Tax Analysts, 117 F.3d at 617 ("Although FSAs may precede the field office's decision in a particular taxpayer's case, they do not precede the decision regarding the agency's legal position."); see also Coastal States, 617 F.2d at 868 (denying the deliberative process privilege where "[t]here is nothing subjective or personal about the memoranda; they are simply straightforward explanations of agency regulations in specific factual situations.").

For these reasons, the Court concludes that the deliberative process privilege does not apply to the following document: ADDKEARN-00256-00262. Therefore, the Court grants in part and denies in part Plaintiffs' objections on this issue.

b. Were the Proper Procedures Followed When Invoking the Deliberative Process Privilege

Plaintiffs argue that Defendant failed to satisfy the procedural requirements for invoking the deliberative process privilege. Courts "carefully scrutinize[ ] the manner of assertion of the [deliberative process] privilege" and require that "the party resisting discovery must meet several procedural requirements." Pacific Gas & Elec., 70 Fed. Cl. at 134 (internal quotation marks omitted). First, the head of the agency that has control

[3]Defendant's Litigation Guideline Memorandum for asserting the deliberative process privilege acknowledges that "a communication issued by the Chief Counsel is much more likely to be a statement of policy or a final decision than if it is issued by a docket attorney." (See Doc. No. 127-15, p. 6.)

[4]There is no explicit evidence that the memorandum was formally adopted as or incorporated by reference into the IRS's final position on Plaintiffs' tax obligations, including the application of accuracy-related penalties. However, the positions espoused in the memorandum are nearly identical to the IRS's ultimate determination in this case. See Coastal States, 617 F.2d at 866 (noting that "a document at the time of preparation may lose privileged status if "adopted, formally, or informally, as the agency position on an issue or used by the agency in its dealings with the public.").

over the requested document must assert the privilege after personal consideration. Id. Alternatively, "the head of an Agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the Agency's behalf." Marriott Intern. Resorts, L.P. v. United States, 437 F.3d 1302, 1308 (Fed. Cir. 2006). Second, the party seeking protection "must state with particularity what information is subject to the privilege." Walsky Const. Co. v. United States, 20 Cl. Ct. 317, 320 (1990). Third, "the agency must supply the court with precise and certain reasons for maintaining the confidentiality of the requested document." Id. at 320 (internal quotation marks omitted). Finally, the agency must establish that certain information is privileged at the time the privilege is asserted. Pacific Gas & Elec., 70 Fed. Cl. at 135.

Defendant submitted an affidavit from Richard G. Goldman which declared his authority to invoke the deliberative process privilege on behalf of the IRS and provided the reasons for the Agency's privilege claims. (See Doc. No 127-13). Plaintiffs object that the Goldman Affidavit is defective because it was not executed contemporaneously with Defendant's privilege log. They maintain that Defendant's trial counsel initially and impermissibly asserted the privilege.

However, courts have rarely rejected the Government's deliberative process privilege claims because of a single procedural deficiency. Dairyland Power Co-op. v. United States, 77 Fed. Cl. 330, 340 (Fed. Cl. 2007). Plaintiffs rely on three unavailing cases to support their argument. In Pacific Gas & Electric Co., 71 Fed. Cl. at 208-10, the court held that formal assertions of the deliberative process privilege, including supporting affidavits from government officials with the authority to assert the privilege, should be executed at the time the privilege is asserted, not in response to a motion to

compel. Nevertheless, the court permitted defendant to rely on its untimely affidavit. Id. at 10 ("However, after reviewing a number of the ex parte affidavits and documents . . ., the court exercises its discretion . . . to afford defendant the opportunity to assert the deliberative process privilege . . . ."). In Mobil Oil Corp. v. Dep't of Energy, 102 F.R.D. 1 (N.D.N.Y. 1983) and Alpha I, L.P. ex rel. Sands v. United States, 83 Fed. Cl. 279 (Fed. Cl. 2008), the courts found the Government's privilege claim defective due to the failure to submit an affidavit, not the timing of the submission.[5] In fact, several courts have held that an affidavit in support of the deliberative process privilege may be produced in response to a motion to compel. See Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726, 727 (Fed. Cl. 2006). Accord In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997); Solis v. New China Buffet #8, Inc., No. 5:10-CV-78 (CAR), 2011 WL 2610296, at *2 (M.D. Ga. July 1, 2011); Abramson v. United States, 39 Fed. Cl. 290, 294, n. 3 (1997).

Accordingly, the Court will not deny Defendant's deliberative process privilege claims on this lone procedural deficiency. Plaintiffs' objection on this issue is denied.

c. Need for Disclosure v. Need for Confidentiality

Plaintiffs maintain that even if the deliberative process privilege applies, their substantial interests in disclosure warrant the production of the documents. The deliberative process privilege is a qualified privilege and may be overcome where there is a sufficient showing of a strong need that outweighs the reasons for non-disclosure. In re Sealed Case, 121 F.3d at 737. This needs determination is to be made on a case-by-case basis using a fresh balancing of competing interests, taking into account factors

[5] In Alpha, the court acknowledged Defendant's obligation to submit an affidavit from an agency official at the time privilege is first asserted, but did not rely on this particular deficiency to deny the privilege claim. 83 Fed. Cl. at 290.

such as "the relevance of the evidence," "the availability of other evidence," "the seriousness of the litigation," "the role of the government," and the "possibility of future timidity by government employees." Id. at 737-38. Plaintiffs have not established a substantial need that overcomes the privilege.

The crux of Plaintiffs' objection is that the requested evidence is critical to: (1) its Motion to Dismiss, which relates to whether Sarma lawfully "opted out" of these partnership proceedings; and (2) their Summary Judgment Motion, which argues that the IRS failed to follow its own procedures for determining Plaintiffs' tax obligation, namely whether Plaintiffs properly disclosed their involvement in FOCus in accordance with Announcement 2002-2.

The Court has already denied Plaintiffs' Motion to Dismiss and the privileged documents will not impact that determination.[6] As for the Summary Judgment Motion, Plaintiffs argue that the documents at issue relate to their tax obligations in this case, their burden of proving that the Final Partnership Administrative Adjustments ("FPAA") issued are erroneous, unfair, and arbitrary, and their theory that the IRS has failed to follow its internal procedures requiring the Director of Field Operations to make a final determination of whether accuracy-related penalties should be imposed. However, as the Court's contemporaneous Order addressing the parties' cross-motions for summary judgment explains, the IRS's internal policies for approving penalties are non-binding

[6]The Motion to Dismiss concerned the IRS's obligation to provide a timely Notice of Beginning of Administrative Proceeding ("NBAP") for the partnership examination that precipitated this case. (Doc. No. 107.) The Court held that even if Defendant possessed enough information to notify Sarma, it was under no obligation to do so because of Plaintiffs' failure to provide the names, addresses, and profit interests of partnerships and indirect partners to the IRS in one of two forms prescribed by the IRS Code. (Doc. No. 178, pp. 12-13.) The documents at issue do not indicate that Plaintiffs provided this information. Indeed, Plaintiffs do not even dispute Defendant's assertion that the information was not provided in one of the two required manners. (See Doc. No. 128.) Accordingly, the requested documents are not relevant to and will not alter the Court's denial of the Motion to Dismiss.

and immune from judicial review. Moreover, Plaintiffs have misconstrued their burden in this case. The Court must conduct a *de novo* review of the FPAAs issued by the IRS. As Sealy Power, Ltd. v. Comm'r., 46 F.3d 382, 385–86 (5th Cir.1995) explains:

> an FPAA is the functional equivalent of a notice of deficiency . . . . A determination of deficiency issued by the Commissioner is generally given a presumption of correctness, which operates to place on the taxpayer the burden of producing evidence showing that the Commissioner's determination is incorrect. Several courts have recognized, however, that they need not give effect to the presumption of correctness and may instead shift the burden from the taxpayer to the Commissioner when the notice of deficiency is determined to be arbitrary or excessive. In these cases, the notice of deficiency involved a determination of unreported income . . . . [However], [e]ven while carving out this exception to the general rule of presuming the determination correct, courts have reaffirmed their reluctance to look behind the notice of deficiency to determine whether the Commissioner's determination is arbitrary.

Because Plaintiffs' case involves allegedly improper tax deductions, not unreported income, the Court will not look behind the FPAA to examine the IRS's factual and legal basis of making tax adjustments. Id.

Plaintiffs respond that the Court has already determined the relevance of the requested documents in its prior Order granting in part Plaintiffs' initial Motion to Compel and concluding that the documents due are "directly related to Plaintiffs' case and therefore relevant." (Doc. No. 91, pp. 5-6.) However, that determination was made in the context of evaluating the relevance of a general discovery request, a burden far less onerous than establishing a compelling need for the evidence that overcomes the deliberative process privilege. Compare Fed. R. Civ. P. 26(b) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"), and e.g. Pacific Gas & Electric Co., 71 Fed. Cl. at 211 (holding that plaintiff has to make a showing of substantial need in order

to succeed in compelling production of documents as to which the government invoked the deliberative process privilege); Moreland Props, LLC v. City of Thornton, No. 07-cv-00716-EWN-MEH, 2007 WL 2523385, at *3 (D. Colo. Aug. 31, 2007) (declaring that the deliberative process privilege should be overridden only with a "strong showing by the party seeking to overcome the privilege that the requested information is very important to the proper resolution of its case.")

In light of Plaintiffs' failure to demonstrate the necessary relevance of the documents at issue and Defendant's compelling interest in maintain the confidentiality of its deliberations, the Court denies Plaintiffs' objection on this issue. In sum, the Court finds that the deliberative process privilege applies to all documents for which the privilege was asserted except for ADDKEARN-00256-00262.

**Work Product Privilege**

Plaintiffs' final objection is that Defendant did not specifically address their assertion that the work-product privilege was waived. In their Motion to Compel, Plaintiffs argued that the IRS waived the attorney-client and work product protection under the sword-shield doctrine when Defendant withheld privileged documents while also relying on them to defend against Plaintiffs' claims. See, e.g., Allstate Ins. Co. v. Levesque, 263 F.R.D. 663, 667 (M.D. Fla. 2010) ("Under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is not privileged."). In their Opposition, Defendant responded *inter alia* that it has not waived the attorney-client privilege because it has not proffered and will not proffer the documents to support any of its claims or defenses. Defendant's arguments apply with equal force to the work

product privilege even if Defendant did not specifically say so.

Semantics aside, Plaintiffs have asserted a nearly identical argument in their Motion for Summary Judgment. The Court independently rejects the argument for the reasons described in the Order addressing the parties' cross-motions for summary judgment.

2. Defendant's Objections to the February 4, 2013 Order

Defendant objects to the Magistrate's holding that the attorney-client privilege does not apply to the requested documents. The Court reviews Defendant's objection with respect to the following 20 documents: IRS-LS-00155-00158, ADDKEARN-00048, ADDKEARN-00060, ADDKEARN-00122, ADDKEARN-00128, ADDKEARN-00132, ADDKEARN-00135-136, ADDKEARN-00138, ADDKEARN-000256-262, AC00231, AC00248, AC00419, AC00800-801, AC00802-00812, ADDK3-013-015, LDG-0010, LDG-0011, LD-00106-00110, and LDG-0013, 16-8 to 16-9.[7]

**Attorney-Client Privilege**

The party asserting the attorney-client privilege has the burden of proving the following elements: (1) legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communication relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be

[7] Plaintiffs' Motion to Compel concerned 68 documents that Defendant had withheld due to either one or both of the attorney client and deliberative process privileges. Magistrate Chappell upheld the deliberative process privilege, not the attorney-client privilege and ordered Defendant to produce 15 documents that the United States had erroneously withheld only under the attorney-client privilege. (See Doc. No. 157, p. 5.) As mentioned earlier (supra, n. 1), Defendant asserted both the attorney-client and deliberative process privileges for four additional documents: AC00419, ADDKEARN-000122, ADDKEARN-000128, and ADDKEARN-000135-136. Later, the Defendant withdrew the deliberative process privilege with respect to these four additional documents. Therefore, this Court will evaluate Defendant's objections with respect to 19 documents, plus Bates No. ADDKEARN-000256-000262, which as the Court noted above is not subject to the deliberative process privilege.

waived. Provenzano v. Singletary, 3 F. Supp. 2d 1353, 1366 (M.D. Fla. 1997), aff'd, 148 F.3d 1327 (11th Cir. 1998). "The key question in determining the existence of a privileged communication is 'whether the client reasonably understood the conference to be confidential.'" United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991) (quoting MCCORMICK ON EVIDENCE, § 91 at 189 (1972)).

As both parties acknowledge, most of the communications involve Leslie Spiegel, a Senior Counsel with the Office of Chief Counsel, Large Business & International Division of the IRS. After an *in camera* review, Magistrate Judge Chappell held that the attorney client privilege did not apply because the communications were either addressing factual issues concerning Sarma's compliance with the IRS and Announcement 2002-2 or because they were "not specified confidential legal advice that would fall under the attorney-client privilege." With the exception of Bates No. ADDKEARN-00256, this Court agrees.

The attorney-client privilege applies only to communications made in confidence between a client and an attorney for the purposes of securing legal advice. Pentz v. United States, 2:09-cv-687-FTM-29, 2011 WL 3269460, at *6 (M.D. Fla. July 29, 2011). Here, Ms. Spiegel appears to have had dual legal and non-legal responsibilities with respect to Plaintiffs' case. On the one hand, she was counsel to the revenue agents who were responsible for examining the tax returns of FOCus and the partnerships involved. (Doc. No. 127, p. 14.) On the other hand, Plaintiffs allege and Defendant does not dispute that Ms. Spiegel was substantially involved in reviewing Plaintiffs' tax returns and assessing their tax obligations. She purportedly interviewed witnesses, prepared audit information and document requests, assisted in the preparation of the

FPAAs, and was involved in negating the penalty relief that was supposed to apply under Announcement 2002-2. (See Doc. No. 172, p. 9 (citing Doc. No. 112-3); Doc. No. 103, p. 9.) This was done even though Defendant declares that "[t]he examination teams were responsible for reviewing the substance of the [tax shelter] disclosures and determining if penalties should be waived." (Doc. No. 131, p. 10.)

Defendant argues that "Ms. Spiegel did what lawyer should do," by ascertaining facts related to the tax shelters and by applying those facts to the law in order to enable the IRS to determine Plaintiffs' tax obligations. However, the revenue agents had similar responsibilities. The Court is unable to glean whether Ms. Spiegel conducted factual and legal analysis as counsel to the revenue agents or as one of the revenue agents.[8] As the proponent of the privilege, Defendant bears the burden of but has failed to identify "the underlying facts demonstrating the existence of the privilege." F.T.C. v. Shaffner, 626 F.2d 32, 37 (7th Cir. 1980). Accordingly, the Court holds that the attorney-client privilege does not apply to IRS-LS-00155-00158, ADDKEARN-00048, ADDKEARN-00060, ADDKEARN-00122, ADDKEARN-00128, ADDKEARN-00132, ADDKEARN-00135-136, ADDKEARN-00138, AC00231, AC00248, AC00419, AC00800-801, AC00802-00812, ADDK3-013-015, LDG-0010, LDG-0011, LD-00106-00110, LDG-0013, and 16-8 to 16-9.

With respect to Bates No. ADDKEARN-000256-262, the Court concludes that the document is subject to the attorney client privilege, but should be produced because it

[8]As Plaintiffs note, courts have frequently held that a taxpayer should not be able to invoke the attorney-client privilege simply because he hires an attorney to prepare his tax returns. See In re Grand Jury Investigation, 842 F.2d 1223, 1224-25 (11th Cir. 1987). This is so even though "a lawyer who prepares a tax return can provide legal advice on tax matters unrelated to the preparation of that return. Such advice falls within the scope of the attorney-client privilege." Id. at 1225. Similarly here, the IRS may not invoke the attorney-client privilege simply because an attorney was involved in evaluating Plaintiffs' tax returns and assessing their tax obligations.

reflects the IRS's final legal position concerning Plaintiffs' tax obligations. As mentioned above, the document is a legal opinion from the Office of Chief Counsel to the Associate Area Counsel in the Large & Mid-Size Business division. The memorandum is in response to a request for assistance regarding whether accuracy-related penalties may be imposed on plaintiffs due to their purported failure to comply with Announcement 2002-2. Ms. Spiegel did not appear to be involved in drafting the document. And there is no indication that the Office of Chief Counsel was responsible for anything but rendering legal advice in its capacity as a legal advisor to the IRS. However, for the reasons explained above, the Court holds that the memorandum's legal conclusions reflect the IRS's final position on Plaintiffs' tax obligations and compliance with Announcement 2002-2. Like the deliberative process privilege, the attorney-client privilege may not be invoked to shield a document adopted as, or incorporated by reference into, an agency's policy. Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 360-61 (2d Cir. 2005). In such circumstances, the chief rationale behind the attorney-client privilege "to promote open communication between attorneys and their clients so that fully informed legal advice may be given," disappears. Id. at 360.

For these reasons, the Court grants in part and denies in part Defendant's partial objections to the February 4, 2013 Order.

## CONCLUSION

It is hereby **ORDERED AND ADJUDGED** that:

(1) Plaintiffs' Partial Objection to Magistrate Judge's Order Denying the Protective Motion to Compel by Plaintiffs is **GRANTED IN PART AND DENIED IN PART**.

(2) United States of America's Partial Objection to Order Dated February 4, 2013 (D.E. 157) Granting in Part and Denying in Part Plaintiffs' Motion for Clarification and Reconsideration (D.E. 148) is **GRANTED IN PART AND DENIED IN PART**.

(3) Defendant has up to and including May 17, 2013 to produce the following documents: IRS-LS-00155-00158, ADDKEARN-00048, ADDKEARN-00060, ADDKEARN-00122, ADDKEARN-00128, ADDKEARN-00132, ADDKEARN-00135-136, ADDKEARN-00138, ADDKEARN-000256-262, AC00231, AC00248, AC00419, AC00800-801, AC00802-00812, ADDK3-013-015, LDG-0010, LDG-0011, LD-00106-00110, LDG-0013, and 16-8 to 16-9.

**DONE AND ORDERED** in Chambers in Fort Myers, Florida, on May 10, 2013.

ROY B. DALTON JR.
United States District Judge